IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

LA' RON MARSHALL,

        **Plaintiff,**

v.                                                                             Civil Action No. 5:10cv52

                                                                                 (Judge Stamp)

ANDREW MOUSE, ROBERT MALONE,

ATHANASIOS PALIOTHEODOROS,

KEVIN KAMICKER, NATHAN BEAM,

ROBERT LONGERBEAM, ADAM MCCORMICK,

JEFFREY OATES, ERIC PHILLIPS, CHEATHAM,

CAPT. BERGAMI, PETRISKO, DR. VASQUEZ

AND DR. RAMIREZ,

        **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff initiated this action on May 13, 2010, by filing a civil rights complaint against the above-named defendants. (Doc. 1) On May 17, 2010, the plaintiff was granted permission to proceed as a pauper and assessed an initial partial filing fee of $3.33. (Doc. 6) After receipt of the initial partial filing fee, the plaintiff filed a motion to amend his complaint under Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971) (authorizing suits against federal actors in their individual capacities). (Doc. 10) The plaintiff's

motion to amend was granted on June 25, 2010, and this case is proceeding as a Bivens action. (Doc. 11)

On July 13, 2010, the Court conducted a preliminary review of the file and determined that summary dismissal was not appropriate at that time. (Doc. 15) Therefore, the defendants were directed to file an answer to the complaint. Id. Summonses were issued and service was conducted by the United States Marshal Service. (Doc. 16) According to the docket, all defendants were served except for defendants Ramirez and Vasquez. (Doc. 17-30, 40-41)

On November 17, 2010, the defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and a Memorandum in Support. (Doc. 46-47) On December 6, 2010, the plaintiff filed a motion to extend his time to respond to the defendants' motion to obtain affidavits and secure additional evidence. (Doc. 58) That motion was granted on March 3, 2011. (Doc. 60) In so granting, the Court construed the defendants' motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, and the plaintiff was granted limited discovery. Id. The plaintiff was directed to make his discovery requests within 30 days of the date of the Order, and his response was due May 16, 2011. Id. As of the date of this Order, the plaintiff has not filed a response to the defendants' summary judgment motion.

## II. Contentions of the Parties

### A. The Complaint

In the complaint, the plaintiff asserts that the defendants subjected him to excessive force and failed to properly treat his injuries in violation of the Constitution of the United States. (Doc.

1 at 4) In support of his claims, the plaintiff asserts that on January 19, 2009, he was assaulted by defendants Malone, Paliotheodoros and Kamicker. Id. at 5. In addition, the plaintiff alleges that defendant Mouse conspired with the other defendants to obstruct justice. Id. The plaintiff alleges that defendants Beam, Longerbeam, McCormick, Oates, and Phillips were deliberately indifferent to his safety by failing to intervene. Id. at 5-6. As to defendants Cheatham, Bergami and Petrisko, the plaintiff asserts that those defendants failed to properly supervise their subordinates. Id. at 6. Moreover, plaintiff alleges that defendants Cheatham, Bergami, and Petrisko failed to properly investigate the incident and promised the plaintiff special treatment if he did not sue over the incident. Id. 6-7. The plaintiff asserts that he was eventually transferred and filed a tort claim, which was denied. Id. at 7-8.

As to defendants Vasquez and Ramirez, the plaintiff asserts that he is suing those defendants in both their official and individual capacities. Id. at 8. The plaintiff alleges that those defendants knew he had been assaulted by staff and failed to provide him with an MRI to properly assess his head injury. Id. He also complains that he was delayed x-rays for three days. Id.

As a result of the alleged assault, the plaintiff asserts that he suffers routine migraines due the head trauma he suffered, which require medication and routine doctor care. Id.

The plaintiff asserts that the amount of force used against him was excessive in light of the fact that he was not resisting and he was being placed in restraints. Id. The plaintiff asserts that the specific incident occurred when defendant Malone notified defendant Mouse that the plaintiff had thrown an "unknown substance" on him. Id. at 9. A "use of force" team was assembled and brought to the Special Housing Unit ("SHU") where the plaintiff was housed. Id. The use of force team

3

came to the plaintiff's cell and extracted both he and his cell mate. Id. After his cell mate was taken from the cell, the plaintiff was taken to an observation cell. Id. The plaintiff asserts that when the defendants attempted to place him in the observation cell, he complained that it was unsanitary and reeked of a chemical agent used on another inmate earlier in the day. Id. The plaintiff asserts that he had an "adverse reaction" to the chemical agent and that he began to cough. Id. at 10. The plaintiff requested that someone clean the cell. Id. Defendant Mouse directed defendant Malone to clean the cell. Id. Defendant Malone left the cell to collect a mop and other supplies to clean the cell. Id. When he returned to the cell, defendant Malone began to mop the floor while defendants Paliotheodoros and Kamicker held the plaintiff against the wall facing away from the other defendants. Id. The plaintiff asserts that as defendant Malone began to mop the floor behind where he was being restrained against the wall, the plaintiff began to ask himself why defendant Malone was there. Id. He began to feel uncomfortable about the fact that defendant Malone was behind him with the mop. Id. at 11. The plaintiff asserts that defendant Malone had a history of harassing him and that defendant Malone did not like the plaintiff very much. Id.

Shortly thereafter, the plaintiff turned his head slightly to the right and saw defendant Mouse whisper something to defendant Phillips. Id. At the time, defendant Phillips was holding the video camera which was used to video tape the extraction. Id. The plaintiff asserts that defendant Phillips then moved to the side, somewhat behind the cell door. Id. The plaintiff contends that he was then suddenly struck in the back of the head with the mop handle by defendant Malone. Id. Afterward, he was punched in the neck, face and head by defendants Kamicker and Paliotheodoros. Id. The plaintiff alleges that he began screaming and that defendants Kamicker and Paliotheodoros began yelling for the plaintiff to stop resisting. Id. at 12. While the yelling and screaming were going on,

4

the plaintiff alleges that he pushed himself out of the cell and onto the "range," so that the incident would be caught on the range cameras. Id. The plaintiff alleges that defendant Malone then ran out of the cell and "jumped over him," and that the plaintiff was then picked up by defendants Paliotheodoros and Kamicker and placed back in the cell. Id. The plaintiff asserts that he thought the defendants were going to kill him and that he feared for his life. Id.

Later that night, the plaintiff was examined by a nurse. Id. at 13. However, the plaintiff contends that the examination was inadequate. Id.

After the incident was over, the plaintiff asserts that the matter was investigated and referred to the Office of Internal Affairs for further review. Id. Moreover, the plaintiff asserts that he attempted to exhaust his administrative remedies but that his remedies were rejected. Id. at 14.

As relief, the plaintiff seeks the cost of the suit, and punitive and compensatory damages. Id. at 15.

**B.   The Defendants' Motion**

In their motion, the defendants' assert that they are entitled to judgment as a matter of law for the following reasons:

1. The plaintiff failed to properly exhaust administrative remedies prior to filing suit.

2. The plaintiff's claims against defendants McCormick, Oates, Longerbeam, Bergami, Cheatham, Petrisko, Ramirez and Vazquez should be dismissed for lack of personal involvement.

3. The plaintiff fails to establish a violation of his constitutional rights for which relief may be granted under the Eighth Amendment.

4. The defendants are entitled to qualified immunity.

5. The plaintiff's complaint fails to establish a claim for which relief may be granted for a violation of the Eighth Amendment.

### III. Standard of Review

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56©. In applying the standard for summary judgment, the Court must review all evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once, "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co., v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier or fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

### IV.   Analysis

**A.   Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. 1997(e)(a). Exhaustion as provided in 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," id., and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted prior to filing a complaint in federal court. See Porter at 524 (citing Booth, 532 U.S. at 741).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 84-85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons;" (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case;" and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full and proper* exhaustion." Woodford at 92-94 (emphasis added). "Full and proper exhaustion includes meeting all the time and procedural

requirements of the prison grievance system." Id. at 101-02.

The Bureau of Prisons (BOP) makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

In this case, the record is clear that the plaintiff has failed to properly exhaust his administrative remedies. (Doc. 47, Ex. 15 at Att. A) Although the plaintiff initiated the grievance process, he did so at the wrong level, and the remedy was rejected.[1] Ex. 15 at ¶ 4. As a result, the plaintiff was advised of the proper way to exhaust his administrative remedies and directed to do so if he wanted to pursue the remedy further. Rather than do as instructed, however, the plaintiff waited seven months and then appealed that decision to the Central Office. Id. at ¶ 5. The Central

---

[1]The plaintiff filed a "sensitive" grievance with the Regional Office. See 28 C.F.R. § 542.12(d)(1) ("If an inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director. . . . If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted. Otherwise the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request. The inmate may [further] pursue the matter by submitting an Administrative Remedy Request locally to the Warden.") The Regional Office determined that the plaintiff's remedy was not "sensitive" and directed him to file at the institutional level.

Office concurred that the issue was not sensitive, rejected the plaintiff's appeal, and instructed the plaintiff to file at the institutional level. Id. Although the plaintiff was twice advised of the proper procedure for exhausting his administrative grievance, he failed to comply with those instructions and filed no further administrative remedies with regard to the allegations in the complaint. Id. at ¶ 6. Thus, he did not properly exhaust his administrative remedies.

To the extent the plaintiff asserts that BOP staff prevented him from exhausting, or hampered his ability to properly exhaust, the plaintiff has provided no evidence which supports this claim. Despite the fact that the Court allowed the plaintiff ample time to conduct discovery on this issue, the plaintiff has failed to provide even one piece of evidence to support this claim. His self-serving and conclusory allegations alone, are not sufficient to support this claim. Accordingly, the plaintiff's claims are due to be dismissed for the failure to exhaust.

Nonetheless, even had the plaintiff exhausted his administrative remedies, the complaint is due to be denied on other grounds.

**B.     Defendants Vazquez and Ramirez**

    1.     Service of Process

Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, "[i]f a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Here, the defendants move for the dismissal of defendants Vazquez and Ramirez for the failure to serve the complaint, and because they were not involved in the

treatment of the plaintiff's injuries. (Doc. 47 at 19)

It is undisputed that neither Vazquez nor Ramirez was served a copy of the summons and complaint in this case, and that even after service of process was returned unexecuted for those defendants, the plaintiff failed to provide the Court with a current or alternate address for those defendants. Moreover, the plaintiff has not responded to the defendants request to dismiss Vazquez and Ramirez for the failure to serve process and this request should be granted.

2. Official Capacities

The plaintiff purports to sue defendants Ramirez and Vazquez in their official capacities. However, Bivens claims are brought against an agent of the federal government in his or her individual capacities. Bivens, *supra*. Thus, remedy under Bivens may not be sought in the individual's official capacity, and the plaintiff's claims against defendants Ramirez and Vazquez in their individual capacities must be dismissed.[2] Id.; see also FDIC v. Meyer, 510 U.S. 471 (1994).

3. Individual Capacities

Like 42 U.S.C. § 1983, liability in Bivens is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted). Therefore, in order to establish liability, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3d Cir. 1988). Some sort of personal involvement on the part of the defendant, and a causal connection to the harm alleged must be

---

[2]The same is true for the plaintiff's official capacity claims against defendants Cheatham and Bergami.

shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right under § 1983. Rizzo v. Good, 423 U.S. 362 (1976).

In this case, it is undisputed that neither defendant Ramirez nor Vazquez ever treated the plaintiff after the alleged assault. (Doc. 47, Ex. 13 at ¶ 3-5; Ex. 14 at 3-5) Nor is it disputed that neither of those defendants ever knew of the alleged assault or the injuries the plaintiff allegedly sustained. Id. Furthermore, it is clear that neither of those defendants was involved with whether the plaintiff received an MRI. Id. Without any personal involvement in the alleged violation of the plaintiff's rights, those defendants cannot be held liable under Bivens and they should be dismissed as defendants in this action.

## C. Defendants Longerbeam, McCormick and Oates

It is undisputed that while the plaintiff was being escorted to a new cell, defendants Longerbeam, McCormick and Oates were escorting the plaintiff's cell mate to a different room in the SHU. (Doc. 47 at 15; Ex. 3 at ¶ 4; Ex. 4 at ¶ 4; and Ex. 5 at ¶ 3) Thus, they did not play a role in escorting the plaintiff to the SHU, nor did they see the plaintiff being escorted to the SHU or the cell in which the plaintiff was allegedly assaulted. Id. Because they had no personal involvement in the incident, and were not present to intervene on the plaintiff's behalf, they could not have been deliberately indifferent to the plaintiff's health and safety. See Farmer v. Brennan, 511 U.S. 825, 828 (1994) (a corrections officer may be liable under the Eighth Amendment for acting with deliberate indifference to an inmate's safety when the official knows the inmate faces a "substantial risk of serious harm" and disregards that risk by failing to take measures to stop it). There is simply

no evidence that any of these three defendants knew the plaintiff faced a substantial risk of harm. Moreover, as they were not present when the incident occurred, they could not take reasonable measures to stop it. Thus, these defendants should be dismissed from this case.

**D.   Defendants Bergami, Cheatham and Petrisko**

It is undisputed that none of these three defendants were present when the alleged assault occurred. They only became involved in the incident after the fact. The plaintiff refers to these individuals as "higher ranking officials who supervise the other said defendants." (Doc. 1 at 6) However, as noted previously, *respondeat superior* is not applicable in Bivens. Instead, for a supervisor to be liable for the acts of his or her subordinates, the plaintiff must show that the supervisor acted indifferently to, or tacitly authorized, the subordinates misconduct and that such indifference or tacit approval was a direct cause of the plaintiff's injuries. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990). The plaintiff has simply not met this burden. The only evidence the plaintiff has provided is his own self-serving and conclusory statements, which are not sufficient to support his claim.

Additionally, to the extent that the plaintiff complains that these defendants failed to properly investigate the incident after the fact, that claim is clearly belied by the record. The plaintiff himself admits that an investigation into the incident took place, resulting in a referral to internal affairs. (Doc. 1 at 13)    In fact, at least one of the defendants was reprimanded as a result of an internal investigation, although not for the use of excessive force, but rather, for improper camera procedures. (Doc. 47, Ex. 11 at ¶ 9.  Thus, the real issue in this case is not about whether a proper investigation was conducted, but in the results of the investigation that was conducted. The plaintiff

believes that because the investigation did not result in criminal charges against the defendants, it could not have been proper. However, the failure to find any wrongdoing on the part of the defendants is not sufficient evidence that the investigation was inadequate or improper, particularly when examining whether the investigation violated a constitutional right. Accordingly, defendants Cheatham, Bergami and Petrisko are entitled to judgment as a matter of law.

**E.   Defendants Mouse, Malone, Paliotheodoros, Kamicker, Beam and Phillips**

In general, Eighth Amendment prohibits "cruel and unusual punishment." Farmer v. Brennan, 511 U.S. at 825. The cruel and unusual punishment clause of the Eighth Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See Wilson v. Seiter, 501 U.S. 294 (1991).

In order to comply with the Eighth Amendment, prison punishment must comport with "evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102 (1976). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. at 837.

Moreover, while courts should give deference to a jail official's determination of what measures are necessary to maintain discipline and security, "the unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment which is prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 321-22 (1986). Therefore, "[i]n order to prevail [on an Eighth

13

Amendment excessive force claim, the plaintiff] will ultimately have to prove not only that the assault actually occurred but also that it was carried out maliciously and sadistically rather than as part of a good-faith effort to maintain or restore discipline." Wilkins v. Gaddy, ___ U.S. ___, 130 S.Ct. 1175, 1180 (2010) (abrogating Norman v. Taylor, 25 F.3d1259 (4th Cir. 1994)(internal quotations omitted). "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." Id. at 1178. "This is not to say that the 'absence of serious injury' is irrelevant to the Eighth Amendment inquiry. [T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation. The extent of injury may also provide some indication of the amount of force applied." Id. (some internal quotations and citations omitted).

With regard to prison disturbances, whether unnecessary and wanton pain and suffering were inflicted "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21. In determining whether the defendant acted maliciously and sadistically, the following factors should be balanced: (1) "the need for application of force;" (2) "the relationship between the need and the amount of force that was used;" (3) "the extent of the injury;" (4) the "threat reasonably perceived by the responsible official;" and (5) "any efforts made to temper the severity of a forceful response." Id. at 321; see also Williams v. Benjamin, 77 F.3d 756 (4th Cir. 1996).

In this case, it is undisputed that the plaintiff had caused a disturbance in his cell and that a "use of force team" was formed to remove the plaintiff from his cell. Moreover, it is undisputed that the plaintiff was escorted to a cell in the SHU. Upon arrival, the plaintiff complained that the cell reeked of a chemical agent. Upon the plaintiff's request, defendant Malone was directed to retrieve

14

cleaning materials and did so. Although the next sequence of events is not clear, it is undisputed that the plaintiff began yelling and screaming and pushed his way out of the cell. Additionally, it is not disputed that the camera was stopped and restarted because one of the corrections officers swore while filming. It is undisputed that after the incident, the plaintiff was examined by a nurse and his injuries were determined to be minor. It is further undisputed that an investigation into the incident occurred and that defendant Mouse was sanctioned for directing that the camera be stopped and restarted. No other discipline occurred. Balancing all of these factors, it is clear that the need for some force was necessary. Moreover, the force used was reasonable in light of the plaintiff's unruly behavior. The reasonableness of the force used is supported by the minor injuries that the plaintiff suffered. Thus, the plaintiff has failed to state a claim of excessive force and the defendants are entitled to judgment as a matter of law.

## V. Recommendation

For the reasons stated, the undersigned recommends that the defendants' motion for summary judgment (Doc. 46) be **GRANTED** and the plaintiff's complaint (Doc. 1) be **DISMISSED with prejudice**.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying those portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon

such recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: July 25, 2011.

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE